### BARBOUR *v.* LYDDY.

*(Circuit Court, D. New Jersey. March 25, 1892.)*

EASEMENTS—CREATION BY DEED—BOUNDING BY "STREET."

    A person owning a farm bordering on the sea, and intersected by a road running parallel with the shore, divided the same into lots running back from the sea to and beyond the road, and prepared a map thereof, upon which lot 18 was. marked as a street. Soon afterwards he conveyed a lot adjoining thereto, describing lot 18 as a "street 50 feet wide, to be kept open and used as a street for the benefit of those purchasing lots." *Held,* that there immediately passed to the grantee, as appurtenant to his lot, a right of access to lot 18, and of passage to and fro over its whole length and breadth, together with an easement of light, air, and prospect, and that no person subsequently deriving title from the grantor had a right to erect a bath-house upon said lot above the line of high water.

In Equity. Suit by S. Rebecca Barbour against Mary A. Lyddy to enjoin interference with an easement. Granted.

*Applegate & Hope*, for complainant.
*Babbitt & Lawrence* and *J. D. Bodle*, for defendant.

GREEN, J.   In 1864, Benjamin Wooley was seised in fee of a certain farm lying immediately south of Long Branch, in Monmouth county, in this state, which on the easterly side bounded upon the Atlantic ocean, and was intersected longitudinally by a public road or street running parallel with, and about six or seven hundred feet westerly from, the shore-line.   Wisely foreseeing that this farm was so situated that it would be in demand for villa and cottage sites, Mr. Wooley had the whole of it laid out into lots 100 feet in width, extending upon the easterly side of Ocean avenue (then generally called "Seabrook Avenue") from the avenue to high-water mark at the ocean, and upon the westerly side extending from the avenue to lands belonging to J. W. Wallack.   These lots were duly numbered and plotted upon a map, which, however, was not made a matter of record.   Upon this map lot No. 18 was laid out as a street 50 feet in width, extending from Seabrook (Ocean) avenue to the sea.   It was called "Adams Avenue."   In October, 1864, Wooley and wife, by their indenture, duly executed and acknowledged, granted, bargained, sold, aliened, released, conveyed, and confirmed to Edward Adams, in fee-simple, a parcel of land, so plotted as stated, and described as follows: "All that lot or parcel of land situate, lying, and being in Deal, near Long Branch, on the east side of Seabrook avenue, leading from Benjamin Wooley's house to Green pond, and begins in the south-west corner of the lot hereby conveyed, in corner of a street fifty feet wide, to be kept open and used only as a street for the benefit of those purchasing lots, and is called 'Adams Avenue;' which said south-west corner is fifty feet distant, on the east side of Seabrook avenue, northerly from the north-west corner of a lot now belonging to Annie D. Wallack, formerly the Wadsworth lot;" and thence the description proceeds, by metes and bounds and courses, to describe the lot conveyed, which was 100 feet in width, and extended from Ocean avenue easterly to high-water mark at the sea, by and between the street named "Adams Avenue" on the south, and other lands of the said Wooley on the north.   By various mesne conveyances, the easterly half of this lot has been conveyed to, and is now owned by and in the possession of, the complainant.

Soon after the conveyance made by Wooley to Adams, Wooley died, having first made, in due form of law, his last will and testament, wherein, among other things, he directed his executors to make sale of certain of his real estate of which he died seised; and the said executors did thereafter, after probate of said will and in execution of this power, make sale and conveyance of certain real estate, which belonged to their testator, to one L. B. Brown.   In the lands so sold and conveyed was included the lot known as "Lot No. 18," 50 feet in width, extending from Seabrook avenue to the ocean, and which was, in fact, the street or passage-way or road referred to in the deed from Wooley to Adams, and called in that deed "Adams Avenue."   The deed of the executors was in the

usual form, without covenants, and conveyed simply to L. B. Brown the right, title, interest, and estate which Wooley had in the lands, which was the subject of the conveyance, at the time of his death. Immediately after the making of this conveyance, Brown caused to be prepared and to be filed in the office of the clerk of Monmouth county a map showing the lands so conveyed to him by the executors of Wooley, deceased, on which said map the lot called "Adams Street" is marked "Lot No. 18." The defendant claims title to her lots, which are designated on the Brown map as lots 9 and 12, through various mesne conveyances from Brown. In the deeds by which the several conveyances were respectively made from Brown to his immediate grantee, and from these grantees to their grantees, and so on until the deeds of conveyance to the defendant, are these words, following immediately after the description of the premises conveyed:

"Together with the right of way to the Atlantic ocean from said Seabrook avenue over and upon a lot fifty feet wide, laid down on said [Brown] map as No. 18, and also the right to erect a bath-house not exceeding eight feet by six feet upon the shore of said ocean, in front of said fifty feet, but not upon the bluff or bank, and the right to bathe in said ocean in front of said lot No. 18; said right of way, right of building, and right of bathing to be appurtenant to the lot of land hereby conveyed, and to be conveyed herewith, by the party of the second part, his heirs and assigns, and not otherwise."

By virtue of this grant, the defendant has erected above high-water mark at the ocean, and within the limits of Adams avenue, a building used as a bath and summer-house combined, which rises some distance above the top of the bluff, and is somewhat larger than the dimensions specified for bath-houses in the deed. This erection the complainant insist is an unauthorized and unlawful structure, which the defendant has placed within the limits of Adams avenue, in derogation of her rights, and which injuriously affects her property, and the easements appurtenant thereto, and the object of her bill of complaint is to effect the removal of such building from its present location, and enjoin its further maintenance or its re-erection within any part of Adams avenue.

The sole question, then, is, what right did the complainant acquire with respect to Adams avenue by the conveyance from Wooley to her grantor? and has the defendant acquired any rights superior to those of the complainant by the conveyance to her from Brown? Wooley, at the date of his conveyance to Adams, (through whom the complainant claims title,) was the owner in fee of all the lands in question. It cannot be disputed that an owner of land may make such disposition of it, or impose such servitudes upon it, as he may deem most beneficial to his own interest. As has been said: "He may found thereon a city or a village, or a manufacturing community, at his own free will, and he may adopt just such measures concerning his land, not inconsistent with the laws of the land, as to his best judgment may seem expedient." Thus, a land-owner may impress upon his private property, by private contract, rights in the strictest sense of the word, but enjoyable by others, analogous, for instance, to the ordinary public rights of highway, and yet

confine these rights to the owners and representatives of the land forming the subject of the contract; and not only may he impress upon his land such conditions and restrictions, but, at the same time, he may invest the purchaser of a parcel of those lands with rights in his remaining lands of which he cannot be afterwards divested, except by his own consent. Thus, where the owner of land makes a map of it, showing streets upon it, and sells and conveys lots abutting upon, and calling for such streets, but such streets were never used or accepted by the public, the purchasers of lots nevertheless acquire the same rights in the streets so called for, as against the original owner, and as against other purchasers, as they would if the streets were in fact public streets.

In the case at bar it appears that the original owner of the land caused to be made a plan or map of his farm, divided into lots, of about a hundred feet in width, and upon that plan marked down lot No. 18 as a street 50 feet wide. The first conveyance of land, after the plotting of them by Wooley, was to Adams, as has been stated; and in the deed of conveyance to Adams the grantor recognized this street so laid down upon his map, and declared that it was to be forever a street 50 feet wide, to be kept open and used only as a street for the benefit of those purchasing lots from him. Until there was some acceptance by the public of this street, it did not take to itself the character of a public highway; it remained limited in its use to those who were to become thereafter purchasers of Wooley's lots. Nevertheless he who first purchased a lot from Wooley, as well as the last purchaser, acquired by conveyance certain rights in and in reference to the street called for by such deed and map, which immediately became appurtenant to the lots so conveyed, and are entirely distinct from, and are in addition to, the right of the grantee, as a part of the public, to use the street, after it shall have been opened for use, and accepted by the public as a public highway. It nowhere appears that this street, Adams' avenue, has ever been accepted by the public, and it is not a highway in that sense. Nevertheless the right which Adams acquired by the conveyance to him of the lot bounded upon this private way or street is co-extensive with the right that he would have had if the street had been before then formally dedicated and accepted as a public highway; or, if that proposition be too strongly stated, at any rate the right which he did acquire was that the private way should be preserved in all respects as if it were a public street. From which it follows that the rights which are born of such conveyance, and are appurtenant to a lot conveyed under these circumstances, are—*First,* a right of access from the abutting property, and a passage to and fro over the street in its whole length and breadth; and, *secondly,* the right of light, air, prospect, and ventilation. This doctrine was clearly laid down in the case of *Barnett* v. *Johnson,* 15 N. J. Eq. 481, and *Story* v. *Railroad Co.,* 90 N. Y. 122, in which last case the court say that an owner whose land abuts upon a highway necessarily enjoys certain advantages from the existence of an open street adjoining his property which belongs to him by reason of its location, and are

not enjoyed by the general public, such as the right of free access to his premises, and the free admission and circulation of light and air to and through his property. The same principle is stated in Washburn on Easements.

Applying this principle to the conveyance made by Wooley to Adams, it is apparent that the grantor impressed upon the land known as "Adams Avenue" a servitude in favor of the abutting land conveyed to Adams; and by virtue of that conveyance, and by operation of law, certain easements, such as have been mentioned, became appurtenant to the lot which was so conveyed. When the executors of Wooley conveyed to Brown, they conveyed only such right, title, estate, and interest in the land as Wooley had at the time of his death. In conveying, therefore, to Brown lot No. 18, which is Adams' avenue, that lot was conveyed subject necessarily to the servitude of all the easements which had become appurtenant to the lot conveyed by Wooley to Adams, and created by such conveyance. By that conveyance to Adams, Wooley had deprived himself of the power to make a conveyance in fee-simple, free from the servitude of these easements, and without condition or restriction, of lot No. 18, which, upon his map, he had plotted as Adams' avenue, and, of course, his executors could convey no greater estate than he himself could, nor in any less restricted manner. As between Wooley and Adams, and their respective heirs and assigns, it was fixed by that first conveyance that the Adams' lot should have, as appurtenant easements, right of air, ventilation, prospect, access, and a right of way from Ocean avenue to the sea over the full length and breadth of Adams' avenue, as laid out, 50 feet in width. Whatever conveyance, therefore, was made thereafter by the executors of Wooley was made necessarily subject to these limitations and restrictions. Nor could Brown, in his subsequent conveyances, grant to those who purchased lots from him any privilege or right or easement inconsistent with the full, complete, and thorough enjoyment of the easements which, by his grantor's own act, had become appurtenant to the Adams lot. So far as the grant of access to the ocean from Ocean avenue over Adams avenue to the purchaser of the lots, originally Wooley's and then Brown's, is concerned, Brown had a perfect right to make it; but when he went further in his grant, and authorized his grantee to erect bathing-houses, no matter how small, anywhere within the limits of Adams avenue, he attempted to grant what he did not possess, and to do that which he had no power to do. Wooley had devoted Adams avenue to a special use, namely, access to the sea. Brown accepted the conveyance of Adams avenue with that use impressed upon it. The only right in Adams avenue which Brown then could grant was a right of passage. That was all that he had, as the grantee of Wooley, and all that he could convey to others. It follows, therefore, that when, in his deed of conveyance for lots formerly a part of the Wooley estate, he sought to enlarge his own rights, and to invest his grantees with such enlarged rights by granting to them the power of erecting bathing-houses within the limits of Adams avenue,

which would necessarily interfere with the enjoyment of the easements already appurtenant to the Adams lot. he did that which was entirely beyond his legal ability and hence wholly ineffectual.

It was claimed on the part of the defendants that the right of access to the shore over Adams avenue should be construed to mean the right of bathing in the ocean. It is not necessary to determine whether this is a fair and allowable construction of the words used by Wooley in the opening of Adams avenue to the use of his grantee. It is very plain that, admitting that access to the ocean over Adams avenue was for the purpose of bathing, it does not follow that those who lawfully use Adams avenue to reach the ocean for that purpose, had a right to erect within its limits bathing-houses which would effectually interfere with, if they did not destroy it as a way. It seems very clear, therefore, that the alleged grant from Brown to the defendant of a right to erect bathing-houses within the limits of Adams avenue cannot justify her in such erection; it was an effort on the part of Brown to convey a right of which he himself was not possessed. The defendant's deed, therefore, does not in any way afford justification for her actions in this matter.

It is very apparent from the testimony, I think, that the bath-house which has been erected by the defendant encroaches very seriously upon the limits of Adams avenue. That avenue extends, beyond all question, to high-water mark at the ocean; and it is admitted that the bath-house of the defendant, which is a large structure 25 feet long and $13\frac{1}{2}$ feet wide, and rising 14 feet above the level of the top of the bluff, is mainly situated within the limits of the avenue above high-water mark. It has been placed there in derogation of the rights of the complainant, who is entitled, as grantee of Adams, to all the easements appurtenant to the Adams lot. and to all the rights in, over, and upon Adams avenue, as granted by Wooley to Adams. The structure of the defendant necessarily seriously interferes with the full enjoyment of all these easements. It is wholly unauthorized; it is an obstruction to the free passage over Adams avenue; and, as the proofs show, is plainly an injury, irreparable, if the structure is permitted to stand, to the lands of the complainant. The practical effect of the action of the defendant in erecting it is to cause the resulting limitation of way, of prospect, of enjoyment, to become *quasi* appurtenant to the complainant's land, to the serious interference with, if not the certain extinguishment of, those very easements which should be and are in law rightfully appurtenant thereto. The case, as stated by the complainant in her bill, has been satisfactorily made out, and she is entitled to a decree as prayed for, with costs.